460 So.2d 1120 (1984)
Helen Kulikowski SCHUELER, Plaintiff-Appellee,
v.
Irvin O. SCHUELER, Defendant-Appellant.
No. 16587-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1984.
Rehearing Denied January 4, 1985.
Writ Denied March 8, 1985.
*1121 Delaune, Blondeau & Hall by A.L. Blondeau, Bossier City, for defendant-appellant.
Love, Rigby, Dehan, Love & McDaniel by Kenneth Rigby, Shreveport, for plaintiff-appellee.
Before HALL and SEXTON, JJ., and PRICE, J. Pro Tem.
SEXTON, Judge.
Irvin Otto Schueler, husband-appellant, appeals a trial court judgment awarding his former wife, Helen Kulikowski Schueler, forty-one percent of his military retirement benefits. We affirm.
Irvin Otto and Helen Kulikowski Schueler were married on November 3, 1956 in Spokane, Washington. The couple moved to Louisiana in 1971 when Mr. Schueler, a member of the Armed Forces since 1953, was transferred to Barksdale Air Force Base in Bossier City. Subsequently, Mr. Schueler retired with the rank of Major on April 1, 1973, after 20 years service. The Schuelers were judicially separated on October 29, 1975, and each was decreed to be a one-half owner of the community. They were divorced in 1977. Apparently all of *1122 the community property was amicably partitioned with the exception of Mr. Schueler's military retirement. Mrs. Schueler filed this action in Caddo Parish District Court on November 22, 1977, pleading the previous divorce and asserting her one-half ownership in those retirement benefits.
The defendant answered that he was a resident of the state of Wyoming for the entire period during which his retirement benefits had been earned, and that as Wyoming was not a community property state, Mrs. Schueler was not entitled to a portion of the benefits. Plaintiff amended her petition to allege that she was entitled to a share of the benefits under Wyoming law. The trial court applied Wyoming law, which calls for just and equitable distribution of property upon dissolution of marriage and found that the Schuelers were married eighty-two percent of the time Mr. Schueler was in the military, entitling Mrs. Schueler to forty-one percent of his retirement pay, both prospectively and retroactively. Following this opinion, both parties applied for a new trial.
In the interim between application for new trial and rendition of the judgment forming the basis of this appeal, significant changes were made in the law relative to division and distribution of military retirement benefits. McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589, decided June 26, 1981, held that the federal scheme of military retirement benefits preempts state community property law. Under the rule of McCarty, federal law precludes a state court from dividing military retirement benefits pursuant to state community property law.
Congress reacted to this decision with an amendment to 10 U.S.C.A. § 1408, the Uniformed Services Former Spouses' Protection Act, Pub.L. No. 97-252, Title X, § 1002(a), 96 Stat. 718, 730-738 (1982), effective February 1, 1983. In pertinent part the Act provides:
(c)(1) Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court. (Emphasis ours)
After the effective date of the abovementioned act, judgment was rendered in the instant case adhering to the original opinion on the merits, but limiting Mrs. Schueler's interest in the retirement benefits to those accruing since June 25, 1981, in accordance with the limitation set forth in 10 U.S.C. § 1408(c)(1). The instant appeal by defendant followed. Plaintiff has neither appealed nor answered the appeal of defendant.
Appellant contends that the phrase in 10 U.S.C.A. § 1408(c)(1), "in accordance with the law of the jurisdiction of such court" means that Louisiana may only apply Louisiana community property law and may not apply Louisiana conflicts principles. In other words, the argument is that the section at issue means that the divorcing forum may use its law to divide military retirement pay between the spouses only when that divorcing forum is also the matrimonial domicile.
The congressional intent in enacting the Uniformed Services Former Spouses' Protection Act of 1982 is explained in the Senate report on the new law quoted in Simmons v. Simmons, 453 So.2d 631 (La.App. 3rd Cir.1984) at page 633:
"Congress' intent in enacting subsection (c)(1) is discussed in the Senate Report on the new law. That report states:
The purpose of this provision is to place the courts in the same position that they were in on June 26, 1981, the date of the McCarty decision, with respect to treatment of nondisability military retired or retainer pay. The provision is intended to remove the federal pre-emption found to exist by the United States Supreme Court and permit State and other courts of competent jurisdiction to apply pertinent State or other laws in determining whether military retired or retainer pay should be divisible. Nothing in this provision requires *1123 any division; it leaves that issue up to the courts applying community property, equitable distribution or other principles of marital property determination and distribution. This power is returned to the courts retroactive to June 26, 1981. This retroactive application will at least afford individuals who were divorced (or had decrees modified) during the interim period between June 26, 1981 and the effective date of this legislation the opportunity to return to the courts to take advantage of this provision.
S.Rep. No. 502, 97th Cong., 2d Sess. 16 (1982), U.S.Code Cong. & Admin.News 1982, 1555, 1611."
We refuse to construe 10 U.S.C. § 1408(c)(1) as a restriction on the authority of a state court to apportion military retirement pay only in those limited instances in which the parties are divorced in the state of the matrimonial domicile, or otherwise be governed by federal law. Such a ruling would merely perpetuate the federal preemption rule of McCarty which 10 U.S.C. § 1408(c)(1) was intended to eliminate.
We agree with the Third Circuit that Congress intended 10 U.S.C. § 1408(c)(1) to have retrospective application in a manner that would totally eliminate the McCarty decision and thus allow state courts to render judgments consistent with decisions preceding McCarty. We note that no congressional intent was manifested to deprive a forum state court of its power to apply the conflicts of law principles existing in that forum in cases involving the distribution of military retirement pay.
The court below in a well reasoned opinion correctly analyzed the problem. The trial court found that the domicile of the parties during the marriage was Wyoming. This finding is supported in the record. Mr. Schueler testified that he had lived in Wyoming in excess of three years when he entered military service in 1953. He also stated that Wyoming was his home of record on military records. Mrs. Schueler offered no controverting proof. The trial court held that the rights to the retirement benefits accrued continuously throughout the husband's period of service and that the wife's entitlement to benefits should be determined under the law of the state in which the parties were domiciled for the respective period during which retirement benefits were accrued.
We are constrained by 10 U.S.C.A. § 1408(c)(1) to treat the retirement pay at issue solely "as the property of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." The trial court, in applying Wyoming law, obviously determined that this phrase meant that Louisiana conflicts principles should apply and that the application of those principles required the application of Wyoming law in this cause.
We agree. LSA-C.C. Art. 10 specifically states that movables are subject to the law of the domicile of the acquiring spouse. Since there is a specific codal provision on the subject, it is unnecessary that we conduct a modern interest analysis per Jagers v. Royal Indemnity Company, 276 So.2d 309 (La.1973). Shaw v. Ferguson, 437 So.2d 319 (La.App. 2d Cir.1983).[1]
Having concluded that the trial court made the appropriate choice of law, we turn to a consideration of whether the award of forty-one percent of retirement benefits is supported by Wyoming law. Section 20-2-114 of the Wyoming Statutes, 1977, provides that:
§ 20-2-114. Disposition of property to be equitable; factors; alimony generally.
In granting a divorce, the court shall make such disposition of the property of *1124 the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children. The court may decree to either party reasonable alimony out of the estate of the other having regard for the other's ability and may order so much of the other's real estate or the rents and profits thereof as is necessary be assigned and set out to either party for life, or may decree a specific sum be paid by either party.
Like the trial court, we were unable to find a Wyoming case dealing directly with the issue of distribution of military retirement. However, under Wyoming law, the trial court is not restricted in a property division action to a distribution of property acquired during the marriage, but may award property to one party which was the separate property of the other spouse. Paul v. Paul, 616 P.2d 707 (Wyo. 1980); Craver v. Craver, 601 P.2d 999 (Wyo.1979). The trial court relied on Storm v. Storm, 470 P.2d 367 (Wyo.1970), in construing the aforementioned statute. We believe that reliance is well-placed. As the Storm Court stated at page 371, "it is our conclusion that a just and equitable property settlement is for plaintiff to have approximately an equal share with her husband in all property which the wife has a part in accumulating."
Furthermore, on review, there must be a clear abuse of discretion before a Wyoming appellate court will upset or adjust a property settlement fixed by a trial judge. Abuse of discretion is defined as such abuse as shocks the conscience of the court. It must appear so unfair and unequitable that reasonable persons could not abide it. Bereman v. Bereman, 645 P.2d 1155 (Wyo.1982). Moreover, it appears that most of the "equitable distribution states" have recognized a spouse's entitlement to military retirement benefits. Rohring v. Rohring, 441 So.2d 485 (La. App. 2d Cir.1983). Accordingly, we believe there is no error in the trial court's determination that, under Wyoming law, an equitable distribution is to award plaintiff forty-one percent of defendant's retirement benefits from June 26, 1981.
We note with interest, however, appellant's contention that the plaintiff, Mrs. Schueler, is not entitled to a percentage of the retirement benefits because Wyoming's equitable distribution principle contemplates a determination of the respective economic circumstances of the parties at divorce, considering all property and debts however acquired; and, therefore, does not envision a division of property subsequent to divorce as a separate proceeding. As we appreciate appellant's argument, it is that Wyoming's equitable distribution principle does not allow a subsequent determination of property rights after a divorce if there has not been such a determination in previous proceedings.
Appellant is correct that under Wyoming law a decree of divorce precludes a subsequent determination of property rights. Cassas v. Cassas, 276 P.2d 456 (Wyo.1954). However, appellant's argument overlooks the fact that in the original separation decree herein in 1975, the plaintiff, Mrs. Schueler, was decreed to be an undivided one-half owner of all of the community property existing between the parties. Thus, the trial court originally indeed adjudicated the property rights of the parties hereincontrary to appellant's assertion. Our view of Wyoming law is that since the property rights of the parties were dealt with in the original separation herein, plaintiff may now specifically assert the extent of those property rights.[2]
Finally, appellant contends that the trial court erroneously overruled his *1125 exception to the jurisdiction of the Caddo Parish court. He argues that since the separation and divorce were granted in Bossier Parish, that LSA-C.C.P. Art. 3941 provides for venue only in Bossier Parish. He asserts that the venue provided by that article is jurisdictional and non-waivable. Appellant is correct that the venue provided in that article is jurisdictional and non-waivable. However, appellant overlooks the fact that the article speaks only of actions "for an annulment of marriage, for separation from bed and board, or for a divorce ...." This cause does not seek relief in any of those respects and is thus not governed by that article. Since this statute provides an exception to the general rules of venue and is therefore in derogation of common rights, it is to be strictly construed and applied only to cases clearly falling within its provisions. Dupre v. Pelotto, 336 So.2d 329 (La.App. 1st Cir.1976).
Thus, in summary, the trial court, using appropriate conflicts of law principles, correctly applied Wyoming law and the applicable federal statute to render judgment for the wife for a portion of appellant's previously vested military retirement.
Accordingly, the judgment below is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] Of course, under Louisiana law, the retirement pay at issue is community property (Rohring v. Rohring, 441 So.2d 485 (La.App. 2d Cir. 1983) yielding the same result as that found by the district court here. It could perhaps be argued that Mr. Schueler's retirement in Louisiana operated to change his domicile to Louisiana. However, neither party has so contended. Both have urged the application of Wyoming law to different effect.
[2] We note that the law of Wyoming is not as clearly established in this regard as we would like, but the aforestated is our view thereof. We further note that when the law of another state is not clearly established, it may be presumed that the law of that state is the same as that of Louisiana. Rohring, supra.