606 So.2d 1355 (1992)
Wade A. BLACKWELL, Plaintiff-Appellee,
v.
Kathleen C. BLACKWELL, Defendant-Appellant.
No. 24120-CA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1992.
*1356 W. Orie Hunter, III, Shreveport, for defendant-appellant.
Blondeau, Caire & Gregorie by Alexander L. Blondeau, Jr., Baton Rouge, for plaintiff-appellee.
Before NORRIS, VICTORY and BROWN, JJ.
BROWN, Judge.
In this action for partition of community property, defendant Kathleen Blackwell appeals from the trial court's finding that the classification and division of the military retirement benefits of her former husband, Wade Blackwell, were governed by the law of North Carolina. The controlling question presented by this appeal is whether the factual determination of the trial court that Mr. Blackwell was domiciled in North Carolina throughout his military career was clearly wrong. Finding no error, we affirm.

FACTS
Mr. Blackwell was inducted into the Air Force at Ft. Chaffee, Arkansas, in August of 1946. After schooling in Mississippi and Illinois, he was assigned to Pope Air Force Base in North Carolina in 1948. There he met Mrs. Blackwell, who was domiciled and living in North Carolina, and they were subsequently married in 1950. He remained at Pope Air Force Base until 1954, when he was ordered to Osan, Korea. From 1955 to 1956, Mr. Blackwell was stationed at Turner Air Force Base in Georgia. From 1956 to 1961, he was reassigned to Pope Air Force Base, North Carolina. From 1961 to 1964, Mr. Blackwell was stationed at Okinawa. From 1964 to 1970, he was assigned to Minot, North Dakota. From 1970 to 1971, he served in Thailand. From 1971 to 1972, he was stationed at Castle Air Force Base in California. Mr. Blackwell's final military assignment was to Barksdale Air Force Base in Louisiana in 1972. He retired in September 1976 while stationed at Barksdale. With the exception of the initial four years before his marriage, Mr. Blackwell designated North Carolina as his permanent home of record.
Mr. Blackwell testified that after retiring in 1976 he moved to Oklahoma to work for Northop Aircraft. After about one year the Blackwells returned to Louisiana and lived in Lafayette. From Lafayette they moved back to Bossier City. After filing for divorce in Bossier Parish, Louisiana, Mr. Blackwell moved from Louisiana and at trial resided in California. Mr. Blackwell testified that neither he nor his wife *1357 voted in Louisiana until after his retirement. According to Mr. Blackwell, he did not change his domicile from North Carolina until after his retirement from the Air Force.
None of Mr. Blackwell's testimony regarding his domicile was disputed by Mrs. Blackwell at the trial on December 9, 1985. Mrs. Blackwell affirmatively acknowledged that aside from a few dates, Mr. Blackwell's testimony was correct.
On September 14, 1982, Wade Blackwell instituted a suit for divorce against Mrs. Blackwell in Bossier Parish. A judgment of divorce was rendered on February 7, 1983, and was signed on March 3, 1983, terminating the community retroactively to the filing of Mr. Blackwell's petition for divorce.
On September 6, 1984, Mrs. Blackwell filed for the partition of community property. On December 9, 1985, the partition suit was tried and at the close of testimony, the court, by oral opinion, found that Mr. Blackwell's "home of record" and domicile for the entire period that he was married and in the service was the state of North Carolina. The court also found that retirement benefits earned before marriage were his separate property.
On January 17, 1987, after receiving memoranda submitted by the parties, the trial judge issued a written opinion that the classification of Blackwell's pension benefits was controlled by North Carolina law and that, under North Carolina law, they were classified as separate property.

DID THE TRIAL COURT ERR IN RULING THAT NORTH CAROLINA WAS THE DOMICILE OF THE PARTIES AND THAT THE LAW OF NORTH CAROLINA GOVERNED THE CLASSIFICATION AND DISTRIBUTION OF MR. BLACKWELL'S MILITARY RETIREMENT BENEFITS?
In 1981, the U.S. Supreme Court ruled that the federal law governing military retirement benefits preempted state community property law. McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). Congress reacted to avoid the consequences of the McCarty decision and conferred jurisdiction in state courts to apply their law to military pension benefits. 10 U.S.C.A. Section 1401, et seq. Jurisdiction under 10 U.S.C.A. Section 1401 et seq. is distinguished from conflict of laws rules. Under the Uniformed Services Former Spouses Protection Act, 10 U.S.C.A. Section 1401 et seq., a court may treat military retirement pay as property solely of the retired member or as property of the member and his spouse in accordance with the applicable state law. A court which otherwise has jurisdiction can apply state law to military pension benefits. Thus jurisdiction exists if the military spouse is domiciled or resides in the state or consents, either impliedly or expressly, to the jurisdiction of the court. Little v. Little, 513 So.2d 464 (La.App.2d Cir.1987); Howard v. Howard, 499 So.2d 222 (La.App.2d Cir. 1986). There is continuing jurisdiction to partition community property if a divorce proceeding was initiated in Louisiana and the military spouse actively participates. Gowins v. Gowins, 466 So.2d 32 (La.1985); White v. White, 543 So.2d 126 (La.App.2d Cir.1989).
In the instant case the parties were domiciled in Louisiana at the time of the institution of divorce proceedings. Further, because Mr. Blackwell initiated the action, he obviously consented to Louisiana's jurisdiction. Having determined that Louisiana has jurisdiction, a conflict of laws analysis must be made.
Louisiana conflict of laws principles determine which state's law applies for the purposes of classifying and dividing pension benefits. Schueler v. Schueler, 460 So.2d 1120 (La.App.2d Cir.1984). Former Civil Code Article 10 is explicit and governs in this case, as suit was filed prior to the effective date of Louisiana's conflict of laws revision (Section 4, No. 923 of Acts 1991). Article 10 provided that movables are subject to the law of the domicile of the acquiring spouse.
*1358 Retirement benefits are incorporeal movable property which generally accrue over a significant period of time. The classification of this movable property as community or separate calls for the court to look to the parties' domicile for the period during which these retirement benefits accrued. The status of this movable property as community or separate is determined by the law of the state where it was acquired. Succession of Dunham, 408 So.2d 888 (La. 1981); Howard v. Howard, 499 So.2d 222 (La.App.2d Cir.1986); Succession of Adger, 457 So.2d 146 (La.App.2d Cir.1984); Whatley v. Whatley, 439 So.2d 444 (La.App.2d Cir.1983).
In Schueler, supra, the trial court found that, although presently domiciled in Louisiana, Mr. and Mrs. Schueler's domicile during military service was Wyoming. This court noted that:
Mr. Schueler testified that he had lived in Wyoming in excess of three years when he entered military service in 1953. He also stated that Wyoming was his home of record on military records. Mrs. Schueler offered no controverting proof.
Using Louisiana conflict of laws principles, this court affirmed the application of the law of Wyoming to the classification and distribution of Mr. Schueler's military retirement benefits. See also Rearden v. Rearden, 568 So.2d 1111 (La.App.2d Cir. 1990); Howard v. Howard, 499 So.2d 222 (La.App.2d Cir.1986); Trotter v. Trotter, 503 So.2d 1160 (La.App. 3d Cir.1987); Moreau v. Moreau, 457 So.2d 1285 (La.App. 3d Cir.1984).
A person's domicile of origin continues until another is acquired. In re Kennedy, 357 So.2d 905 (La.App.2d Cir. 1978). A change in domicile requires the physical presence of the individual in the new domicile coupled with a present intent to permanently reside in the new domicile. Messer v. London, 438 So.2d 546 (La.1983). A serviceman's domicile, once established, does not change merely because of his move of physical residence while in the service of his country; the serviceman may abandon his domicile and establish a new one upon complying with the two prongs set forth in Messer v. London, supra (physical presence and intent to remain permanently). Howard v. Howard, supra. There is a presumption against a change in domicile. The burden of proof is on the party alleging a change of domicile. Rohring v. Rohring, 441 So.2d 485 (La.App.2d Cir.1983).
Mr. Blackwell testified that he maintained the state of North Carolina as his legal domicile and as his official military "home of record" from the time of his marriage to Mrs. Blackwell in 1950 until his retirement from the Air Force in 1976. Mr. Blackwell also introduced into evidence DD Form 214s reflecting his entire period of active service in the Air Force. On each of the forms Mr. Blackwell designated North Carolina as his home of record. Mr. Blackwell further testified that neither he nor his wife ever voted in Louisiana prior to his retirement. Mr. Blackwell testified that he did not change his domicile to Louisiana until after his retirement. However, this change of domicile after retirement is irrelevant to the issue before the court, which is the domicile of Mr. Blackwell during the time of his military service, which is when the benefits vested and were thus acquired.
Mrs. Blackwell confirmed her former husband's testimony on the issue of his domicile. Based on the above evidence and testimony, the trial court found that Mr. Blackwell had been a domiciliary of the state of North Carolina for the entirety of his military service. Applying the appropriate standard of review, we find that the trial court was not manifestly erroneous in concluding that the domicile of Mr. Blackwell during his military career was North Carolina. Therefore, the law of North Carolina controls the classification and distribution of Blackwell's military retirement benefits. We note that an appeal has not been perfected concerning the trial court's interpretation of North Carolina law.

DID THE TRIAL COURT ERR IN NOT REOPENING THE CASE TO ALLOW MRS. BLACKWELL TO OFFER EVIDENCE REGARDING THE DOMICILE OF THE PARTIES DURING THE MARRIAGE?
Louisiana Code of Civil Procedure Article 1971 provides in part that a new *1359 trial may be granted to all or any of the parties on all or part of the issues. Article 1972 of the Code of Civil Procedure sets forth the grounds which, if they exist, mandate that the trial judge grant a new trial. Article 1973 is the provision relating to all other situations and it provides that a new trial may be granted in any case if there is good ground therefor.
Article 1975 of the Code of Civil Procedure requires a motion for a new trial to set forth the grounds upon which it is based. Appellant's motion to reopen the trial for the receipt of additional evidence was based on her assertion that testimony given by Mr. Blackwell at the trial regarding the source of payment of community debts was false. Appellant sought the reopening of trial for the limited purpose of presenting evidence in contravention of the testimony of her husband on the source of funds used to pay debts of the former community. This evidence did not relate to the issue of ownership of the retirement benefits.
In his written reasons for granting the reopening, the trial judge noted that in the interest of justice, the trial would be reopened only for the purpose set forth in appellant's motion, the presentation of evidence of the source of funds used to pay community debts. The parties reached a settlement as to this issue prior to the hearing. After the stipulated agreement was read into the record, Mrs. Blackwell sought to introduce evidence regarding the domicile of the parties. The judge precluded this offering of evidence. Appellant asserts that this preclusion was in error.
Appellant's argument is that because Mr. Blackwell gave false testimony concerning the payment of community debts, his testimony regarding domicile must also be false. However, Mrs. Blackwell was present and represented by counsel at the original trial of this matter. Not only did she not controvert Mr. Blackwell's testimony and evidence on the issue of domicile, she acknowledged the accuracy of his statements.
The granting or refusal of a motion for a new trial based solely on discretionary grounds is within the judgment of the trial judge and his ruling will not be disturbed on appeal unless it is clear abuse of discretion. Charpentier v. Louisiana Land and Exploration Co., 415 So.2d 452 (La.App. 1st Cir.1982); Williams v. Cinclare Central Factory, 396 So.2d 301 (La.App. 1st Cir.1981), writ denied, 399 So.2d 621 (La. 1981); Hardy v. Kidder, 267 So.2d 582 (La.App. 3d Cir.1972), affirmed, 292 So.2d 575 (La.1973).
The trial judge did not abuse his discretion in limiting the scope of the rehearing. Appellant's own application for reopening of trial was based solely on the alleged false testimony of Mr. Blackwell concerning the source of funds used to pay community debts. Appellant's premise that because Mr. Blackwell gave inaccurate testimony regarding the payment of community debts, his testimony on the issue of domicile is likewise not credible is unsubstantiated and is even refuted by the appellant's own testimony at the original trial. In light of the foregoing, the trial judge's decision not to allow appellant's evidence was clearly within the discretion afforded by Article 1973 of the Code of Civil Procedure.

DECREE
For these reasons, the judgment of the trial court is AFFIRMED at appellant's cost.