762 So.2d 695 (2000)
Elia PETERS
v.
Hollis B. HALEY.
No. 99 CA 0866.
Court of Appeal of Louisiana, First Circuit.
May 12, 2000.
Writ Denied June 30, 2000.
*696 Kyle M. Keegan, William L. Caughman, III, Roy, Kiesel & Tucker, Baton Rouge, for Plaintiff-Appellee Elia Peters.
A. Wayne Stewart, Denham Springs, for Defendant-Appellant Hollis B. Haley.
Before: SHORTESS, C.J., PARRO, and KUHN, JJ.
*697 PARRO, J.
Hollis B. Haley appeals a judgment partitioning certain former community property belonging to him and his ex-wife, Elia Peters. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
Elia Peters filed a petition for judicial partition of former community property on October 20, 1993, asking the court to partition certain property that had not been partitioned at the time of her divorce from Mr. Haley. The property she claimed as part of the former community consisted of immovable property in Livingston Parish purchased during the marriage and a portion of Mr. Haley's military pension and retirement benefits that had been paid and were continuing to be paid to him.
Mr. Haley filed an exception of "no cause of action," stating he was not married in Louisiana, the parties never lived as husband and wife in Louisiana, and they did not come under a community property regime. In an amended petition and attached affidavit, Mrs. Peters stated that Mr. Haley was domiciled in Louisiana immediately before entering the United States Air Force in 1955. They were married in 1965 in San Antonio, Texas, where he was stationed; he remained a domiciliary of Louisiana at that time. Before she and Mr. Haley were married, she was attending college in San Antonio and paying in-state tuition; after her marriage, because she was married to a Louisiana domiciliary, she had to pay out-of-state tuition. Her daughter began attending Louisiana State University in 1972 and paid in-state tuition, because the parties were domiciled in Louisiana. Several years before Mr. Haley retired in 1975, his last posting was to Louisiana. He remained in Louisiana after retirement and still lives in Livingston Parish. According to Mrs. Peters, throughout their marriage, although Mr. Haley was stationed at various Air Force bases in the United States and overseas, it was her understanding that his domicile and their matrimonial domicile was the state of Louisiana. They were divorced in August 1981 by a Florida court.
Mr. Haley's exception of no cause of action was eventually heard and overruled by the district court. Mrs. Peters filed a motion for partial summary judgment, which was also denied by the court. Her application for supervisory writs to this court was denied. Mr. Haley filed a reconventional demand, claiming reimbursement for separate funds expended for the benefit of the community and seeking partition of certain movable property, including household furnishings and Mrs. Peters' retirement benefits.
After a trial, the court provided written reasons for judgment. The court concluded that Mr. Haley was a Louisiana domiciliary and, because under Louisiana law a wife's domicile is that of her husband, Mrs. Peters was also a Louisiana domiciliary during their marriage. Therefore Louisiana's community property laws were applicable. The court found that the parties voluntarily divided all personal effects and most of their movable property at the time of the divorce, so the court did not consider any movable property except the retirement benefits of both parties. The evidence showed that, applying the Sims formula to Mr. Haley's retirement funds,[1] Mrs. Peters was entitled to 24.69% of all his retirement benefits. The court ordered Mrs. Peters to produce documentation to determine what amounts would be owed to Mr. Haley from her retirement benefits.[2] The court found the immovable *698 property was located in Louisiana and the evidence showed it was purchased during the marriage. The court also found the evidence did not sufficiently prove that the immovable property was purchased with separate funds, and therefore it was classified as community property. However, because the garage and barn were added by Mr. Haley after the termination of the marriage, the court found they were his separate property.
On June 30, 1998, after Mrs. Peters had supplemented the record with documentation concerning her retirement benefits, the court signed a judgment. The court ordered that retirement benefits of both parties were to be distributed in conformity with the Sims formula. Mrs. Peters was entitled to 24.69% of all of the military retirement benefits that Mr. Haley had received in the past, net of taxes, and would receive in the future. Mr. Haley was entitled to 29 .34% of all retirement benefits that Mrs. Peters had received in the past, net of taxes, and would receive in the future. Based on evidence that Mr. Haley had already received retirement benefits from the date of divorce through May 1998 in the amount of $193,614.42, net of taxes, Mrs. Peters was entitled to 24.69% of this amount, or $47,803.40, with interest from date of judicial demand through May 1998 in the amount of $15,551.04, for a total of $63,354.44. This amount was to be offset by $2,316.98, representing 29.34% of $7,897.00, net of taxes, already received by Mrs. Peters in retirement benefits, plus $81.70 in judicial interest. Accordingly, Mr. Haley was ordered to pay Mrs. Peters $60,955.76 for benefits he had received from the date of their divorce through May 1998, with judicial interest, and with judicial interest continuing thereon until paid.
The court declared Mrs. Peters owner of a one-half undivided interest in the immovable property in Livingston Parish, including the house and improvements. However, the court declared that the barn and garage located on that property were the sole property of Mr. Haley.
Mr. Haley moved for a new trial, claiming the court erred in declaring some of the buildings were his separate property, despite finding that the land upon which they were built was community property. He also contended the court erred in failing to grant him reimbursement for funds spent in the preservation of the property, including the past, present, and future payment of the mortgage notes. The motion for new trial was denied on September 25, 1998. This appeal followed.
Mr. Haley raises only two issues in this appeal. He argues that the trial court erred in ruling that Louisiana was the domicile of the parties and that the law of Louisiana governs the classification and distribution of his retirement benefits. He also contends the trial court erred in that it attempted to divide immovable property with Mr. Haley owning buildings and sheds on the immovable property and with both parties having an undivided interest in the land.[3]

MILITARY RETIREMENT BENEFITS
A state court which otherwise has jurisdiction can apply state law to military *699 retirement benefits.[4] Jurisdiction exists if the military spouse is domiciled or resides in the state or consents, either impliedly or expressly, to the jurisdiction of the court. 10 U.S.C.A. § 1408(c)(4)[5]; Blackwell v. Blackwell, 606 So.2d 1355, 1357 (La.App. 2nd Cir.1992). In this case, Mr. Haley resides in Louisiana and accordingly, Louisiana has jurisdiction over this case.
Louisiana's conflict of laws principles determine which state's law applies for the purposes of classifying and dividing military retirement benefits. Schueler v. Schueler, 460 So.2d 1120 (La.App. 2nd Cir. 1984), writ denied, 464 So.2d 318 (La. 1985). Louisiana's conflict of laws provisions dealing with ownership of marital property are in Articles 3523 through 3527 of the Louisiana Civil Code. Retirement benefits are incorporeal movable property. Blackwell, 606 So.2d at 1358. Article 3523 states, with regard to movable property:
Except as otherwise provided in this Title, the rights and obligations of spouses with regard to movables, wherever situated, acquired by either spouse during marriage are governed by the law of the domicile of the acquiring spouse at the time of acquisition.
Accordingly, the classification of this movable property as community or separate calls for the court to determine where the acquiring spouse was domiciled when the retirement benefits accrued, because the classification of this property is dependent upon the domicile of the acquiring spouse at the time of acquisition. Howard v. Howard, 499 So.2d 222, 226 (La.App. 2nd Cir.1986).[6]
The trial court in this case found that Mr. Haley's domicile throughout the marriage was Louisiana. This finding can be overturned by this court only if it is manifestly erroneous. See Blackwell, 606 So.2d at 1358. The two-part test for the appellate review of a factual finding is whether there is a reasonable factual basis in the record for the finding of the trial court and whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
A person's domicile of origin continues until another is acquired. Blackwell, 606 So.2d at 1358. There is a presumption against a change in domicile, and one who acquires a new domicile has the burden of proving the change. Gowins v. Gowins, 466 So.2d 32, 35 (La.1985). A change in domicile requires the physical presence of the individual in the new domicile, along with a present intent to permanently reside in the new domicile. Blackwell, 606 So.2d at 1358; Howard, 499 So.2d at 224-25. A member of the military is presumed to retain the domicile of his home state. See LSA-C.C. art. 46; Gowins, 466 So.2d at 35. A serviceman's domicile, once established, does not change merely because of his move of physical residence while in the service of his country; the serviceman may abandon his domicile and establish a new one upon complying with the two prongs of physical *700 presence and intent to remain permanently. Blackwell, 606 So.2d at 1358.
At the trial, Mrs. Peters reiterated all the factual information outlined in her petition and attached affidavit, She also testified that Mr. Haley always expressed an intention to return home to Louisiana permanently at the conclusion of his military service. Although they purchased a house in Mississippi in January 1969 while Mr. Haley was stationed there, in 1972 he requested and obtained a transfer to Louisiana. Because she had to keep her job to pay for her children's college education, Mrs. Peters remained in Mississippi. The couple visited each other back and forth between the two states until 1975, when Mr. Haley retired and returned to Mississippi. Mr. Haley moved back to Louisiana in 1976, and in 1978, he bought property in Livingston Parish and built the house where he now resides. The job position Mrs. Peters was holding was eliminated in 1979 and she obtained a job in Florida. When she moved, the Mississippi house was sold and the couple divided the proceeds; they also divided their personal effects and other movables. The couple was divorced in Florida in 1981.
Her daughter, Audrey Myer, confirmed that Mr. Haley made frequent comments about Louisiana being his homeparticularly, Denham Springs, where his family lives. She also testified concerning her college education at Louisiana State University, which she began attending in 1972. She was allowed to pay in-state tuition because her enrollment showed the Denham Springs address.
Mr. Haley testified that he was born and raised in Louisiana and lived there until he entered the Air Force in 1955. During his twenty-year military career, he was stationed in Texas, New Mexico, Turkey, Vietnam, Kansas, Mississippi, and Louisiana. During that time, he re-enlisted several times and on each re-enlistment form throughout his career, he showed his home of record as his mother's current address in Louisiana. He also retained his Louisiana driver's license. After retiring in November 1975, he lived about six months with his wife in Mississippi, but was unable to find a job there and returned to Louisiana in May 1976, where he has continued to reside since that date. In 1978, he purchased two acres of land in Livingston Parish; he paid $3000 cash for one acre and financed the second for three years, at the end of which time it was paid in full. Later that year, a house was constructed on the property, and he lived there. In connection with his testimony, military payment records showing the retirement benefits paid to him since 1975 were introduced, and he acknowledged receipt of the payments shown there. He also confirmed that when the house in Mississippi was sold, he received half of the proceeds and certain movable property.
Mr. Haley testified that when living in San Antonio, he registered to vote there and considered it his domicile. When he and Mrs. Peters bought their house in Mississippi, he considered that their domicile. He explained that he requested the transfer to Louisiana in 1972 in order to avoid another overseas posting. He drove home to Mississippi almost every weekend until his discharge in 1975, when he moved back there. When discharged from the military, he showed the Mississippi address on his discharge papers as his mailing address after separation. He returned to Louisiana in 1976 when he could not find employment in Mississippi. Mr. Haley testified that he and Mrs. Peters never lived in Louisiana as husband and wife and were never domiciled in Louisiana. He confirmed that he built a house on the Louisiana property and, after the divorce, built a barn and garage and made other improvements.
Based on our review of the record, we conclude there is factual support for the trial court's finding that Mr. Haley never changed his domicile when he entered the Air Force, and Louisiana remained Mr. Haley's domicile throughout his military *701 career. Mr. Haley lived in Louisiana all his life except during his military service, when he had to live wherever the Air Force sent him, and for one year following his retirement. He consistently showed Louisiana as his home of record throughout his career, a factor noted as significant in a number of cases in which the military retiree's domicile is an issue. See, e.g., Rohring v. Rohring, 441 So.2d 485 (La. App. 2nd Cir.1983); Schueler, 460 So.2d 1120; Howard, 499 So.2d 222; Blackwell, 606 So.2d 1355. He kept his Louisiana driver's license. During his military service, he referred to Louisiana as home in conversations with his family and indicated a desire to return there. As soon as the opportunity presented itself, he requested a transfer to a military base in Louisiana. Based on his military records showing Louisiana as his home of record, universities in Texas and Louisiana considered his family members as Louisiana residents. In over twenty years since his discharge, six of those while still married to Mrs. Peters, he has made his home in Louisiana. Reviewing this record in its entirety, there was no manifest error in the trial court's finding that Mr. Haley never changed his domicile, but remained a domiciliary of Louisiana during his military career, including the years he was married to Mrs. Peters.[7]
Because Mr. Haley was the acquiring spouse for the movable property at issue in this case, the trial court correctly classified the military retirement benefits as community property. See LSA-C.C. art. 3523. Community property includes all property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse. LSA-C.C. art. 2338. Therefore that portion of Mr. Haley's retirement benefits accruing during his marriage to Mrs. Peters was property of the former community, and the trial court's judgment partitioning it was correct.[8]

LOUISIANA IMMOVABLE PROPERTY
Louisiana Civil Code article 3524 states the following regarding conflict of laws when Louisiana immovable property is at issue:
Except as otherwise provided in this Title, the rights and obligations of spouses with regard to immovables situated in this state are governed by the law of this state. Whether such immovables are community or separate property is determined in accordance with the law of this state, regardless of the domicile of the acquiring spouse at the time of acquisition.
It is clear that the classification of immovable property in this state is determined by Louisiana law.
The classification of property as separate or community is fixed at the time of its acquisition. Smith v. Smith, 95-0913 (La.App. 1st Cir.12/20/96), 685 So.2d 649, 651. Property acquired during the existence of the marriage through the effort, skill, or industry of either spouse is community, as is property acquired with community things or with community and separate things, unless classified as separate property under Article 2341. LSA-C.C. art. 2338. Under Article 2341, the separate property of a spouse is his exclusively, and includes property acquired by a spouse with separate things. The legal regime of community property is terminated by, among other things, a judgment of *702 divorce. LSA-C.C. art. 2356. After termination of the community property regime, the provisions governing co-ownership apply to former community property. LSA-C.C. art. 2369.1. At that point, each spouse owns an undivided one-half interest in former community property. LSA-C.C. art. 2369.2. Under Article 804 of the co-ownership provisions, if one co-owner makes substantial alterations or improvements consistent with the use of the property, but without the express or implied consent of his co-owner, the rights of the parties are to be determined by Article 496. In conjunction with that article, the co-owner who did not give consent may not demand the removal or demolition of such constructions on the property, but must keep them and pay the other co-owner either the cost of the materials and workmanship, or their current value, or the enhanced value of the immovable. See LSA-C.C. art. 496.
A trial court's findings regarding the nature of property as community or separate are factual determinations which will not be disturbed absent manifest error. Harvey v. Amoco Production Co., 96-1714 (La.App. 1st Cir.6/20/97), 696 So.2d 672, 677.
The evidence concerning the Louisiana immovable property shows that two acres of land were purchased in 1976 and the purchase price was fully paid by 1979. Because this purchase occurred during the marriage, the trial court was correct in classifying this property as part of the community. A house was built on the property, apparently in 1978, when the parties mortgaged the property to Jim Walter Homes, Inc. Therefore, because the house was purchased during the marriage, its classification as community property was also correct. The parties were divorced in 1981. After the divorce, Mr. Haley added a barn and a garage.
In written reasons, the court's findings concerning the immovable property were as follows:
The Court finds that the parties were married at the time the immovable property was acquired and mortgaged.
* * *
The Court finds the immovable property purchased in Louisiana to be a community asset as it was not sufficiently proved to have been paid for with separate funds. The garage and barn were added after the termination of the marriage, thus they are the separate property of Mr. Haley.
The judgment recognized Mrs. Peters as owner of a one-half undivided interest in the two acres of immovable property, specifically including the house and other improvements on it, except for the barn and garage, which were declared to be the sole property of Mr. Haley.
Mr. Haley's only argument in brief concerning the classification of the property is that there "is absolutely no authority for this sort of division of property. One can not own buildings or other things separate from the land itself." This statement is simply incorrect. The Louisiana Civil Code has long recognized that buildings and other constructions can indeed be owned by someone other than the owner of the land upon which they are constructed. See LSA-C.C. art. 464.[9] The comments to Article 465, which deals with things incorporated into a tract of land becoming component parts of that land, make it clear that although such component parts thereby are classified as immovable, this classification does not determine the question of ownership of those things. See LSA-C.C. art. 465, 1978 Revision Comment (c). We find no merit in Mr. Haley's argument.
*703 We also find no manifest error in the trial court's classification of the two acres of land and the house as community property, or in its treatment of the barn and garage as Mr. Haley's sole property. Clearly, Mr. Haley constructed the barn and garage after the divorce. Therefore, these were not acquired during the existence of the community.

CONCLUSION
We affirm the judgment of the trial court. The costs of this appeal are assessed to Mr. Haley.
AFFIRMED.
KUHN, J., dissents from the conclusion of Haley's domicile. The Judgment declares the nature of property community and/or separate but does not partition the property. This violates LSA-C.C.P. art. 1915 and partitian statutes of Title 9 of R.S.
NOTES
[1] This formula for partition of community property in the form of pension benefits of any kind was established by the Louisiana Supreme Court in the case of Sims v. Sims, 358 So.2d 919 (La.1978).
[2] Mr. Haley did not conduct any discovery and did not put on any evidence at trial concerning the amount of his ex-wife's retirement benefits. Instead, he filed a post-trial motion to re-open the case to require Mrs. Peters to provide such evidence. Despite the fact that Mr. Haley bore the burden of proof on this issue in order to prove this portion of his reconventional demand and had failed to meet this burden, in its written reasons for judgment, the court ordered such production from Mrs. Peters. Mrs. Peters had acknowledged at trial that if Mr. Haley were entitled to some portion of her retirement, he should get it. She supplemented the record in compliance with the court's order.
[3] Mr. Haley has apparently abandoned his claim for reimbursement of some portion of the funds he paid after the divorce to make improvements to the immovable property and to satisfy the mortgage on the house. Because his attorney failed to assign this issue as error or brief it to this court, it is simply not before us on this appeal and we are unable to consider this claim. See Uniform Rules-Courts of Appeal, Rule 2-12.4.
[4] For a discussion of the historical tension between the application of federal law or state community property laws to the distribution of military retirement benefits under 10 U.S.C.A. § 1401 et seq., see Gowins v. Gowins, 466 So.2d 32 (La.1985).
[5] 10 U.S.C.A. § 1408(c)(4) provides:

A court may not treat the disposable retired or retainer pay of a member in the manner described in paragraph (1) unless the court has jurisdiction over the member by reason of (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court.
[6] The issue of the domicile of the spouses is also a necessary inquiry under Louisiana Civil Code article 2334, which states:

The legal regime of community of acquets and gains applies to spouses domiciled in this state, regardless of their domicile at the time of marriage or the place of celebration of the marriage.
[7] The court stated that Mrs. Peters was also domiciled in Louisiana, because under Louisiana law, the domicile of a married woman was that of her husband. This statement was included in Article 39 of the Louisiana Civil Code until a 1985 amendment deleted it. 1985 La. Acts, No. 272, § 1. Therefore this was a correct statement of the law applicable to these parties during their marriage, which terminated in 1981.
[8] Neither party challenged the court's computations or the application of the Sims formula to the partition of each individual's retirement benefits. We note that this was the correct method for partitioning these benefits.
[9] Article 464 states that "Buildings ... are separate Immovables when they belong to a person other than the owner of the ground."