| NORRIS, Chief Judge.
This is an action to declare an elected office vacant under La. R.S. 18:671, et seq. The District Attorney alleged that Little Jack Brown, the District 5 Police Juror of Red River Parish, had moved to District 2 and no longer met the domicile requirements of a Police Juror. After trial on the merits, the District Court found that Brown does not live in District 5, and declared the office vacant. Brown appeals. For the reasons expressed, we reverse and render.

Factual background

Brown won the District 5 Police Jury seat on November 11, 1999.[1] According to testimony, he has attended every meeting but one since he began his service. At the time of his election, he was living on Clark-son Street in Coushatta, which is in District 5. In February 2000 he moved to an apartment at 1907 Ringgold Avenue, Cous-hatta, also in District 5. In September 2000 he married Miranda Loftin, who owned a mobile home and had previously immobilized it in Martin, which is in District 2.[2] Mrs. Brown testified that she lived in the Ringgold Ave. apartment briefly, at most “a couple of months,” but marital problems arose and she moved to the trailer. A major source of discord, still unresolved, was that Brown refused to give up his in-town (District 5) residence; both testified that Brown moved some clothes to the mobile home and stayed there on some occasions but never really vacated the apartment. Both the Browns and a neighbor,^Arthur Ellis, agreed that Brown used the Ringgold Ave. apartment as his principal residence until early 2001.
In February 2001, however, Brown’s cousin, Johnny Ray Adams, moved in with him at the Ringgold Ave. apartment. A few weeks later, Adams’s wife and two small children also moved in, and remained until early August. According to Brown and Ms. Adams, this was a favor to Brown’s cousin, who was financially pressed at the time; the Adamses paid Brown no rent, but gave him some cash toward the utilities.
Everyone testified that while Ms. Adams and the children were there, Brown never spent a night at the apartment. Brown testified that he was working at various *1280 auto dealerships until April 2001, was often out of town, and then took a job working offshore. He testified that when he was in Red River Parish, he stayed occasionally at his wife’s trailer, and sometimes with his grandmother or friends. However, he continued the apartment’s utilities in his own name[3] and kept some of his belongings, including furniture, hand tools and welding equipment, at the apartment. The Adamses left the apartment in early August 2001.
Meanwhile, one of Brown’s District 5 constituents, a Mrs. Drakes, had been asking the City Council and Police Jury for help with a problem. Learning that it was the latter’s responsibility, Mrs. Drakes attended the June 2001 Police Jury meeting. She apparently tried to contact Brown, and on July 27 she phoned the District Attorney’s office to complain that Brown did not live at his official address, 1907 Ringgold Ave. William Jones, the | aDistrict Attorney, advised her by letter that he could take no action until he received a written complaint. On August 14, Mrs. Drakes submitted a written complaint that Brown no longer lived on Ringgold Ave. but had moved to Martin. Attached were the signatures of 53 other District 5 voters.
Scotty Fletcher, the victims assistance coordinator for the Red River Parish D.A.’s office, testified that on July 30 Jones asked him to investigate Mrs. Drakes’s complaint. He testified that on July 31 he rode to the Ringgold Ave. address and saw a woman with two small children in the yard. He also spoke to the neighbor, Mr. Ellis, who lives in the front apartment (Brown’s apartment was in the rear of the building), and to the registrar of voters.
On August 14, he returned to the apartment, coincidentally at the same time as a CLECO employee who was turning off the electricity at the customer’s request. Fletcher also found a notice from TransLa Gas on the doorknob, stating that the service had been temporarily left on. Noticing that the padlock had been pried open and the door was ajar, Fletcher knocked and found nobody present. He went inside and felt the place was vacant: there was a bed in the bedroom and an apparently non-functioning refrigerator in the kitchen, but no stove, no food in the cabinets, no towels in the bathroom, and litter on the floor and countertops. Fletcher returned to the apartment two days later, finding that the padlock had been replaced but the electricity was still off and the TransLa notice was still on the door. He also spoke to Mrs. Brown at the trade school, advising her of the complaint that Brown no longer lived in the district.
|4On August 20, Brown phoned Fletcher from offshore to say that he still lived at 1907 Ringgold Ave., although he had let his cousin and his family stay there for a while. He admitted that he turned off the electricity and moved some of his furniture out of the apartment, but this was in an effort to promote reconciliation with his wife by showing that he would get a nicer place for her and their newborn son to live when he returned from offshore. His objective was to find a suitable house in District 5, or else rent a mobile home and place it on property near Lake End.
On August 27, Mr. Jones wrote a report outlining the findings of the investigation and expressing the opinion that Brown “is not domiciled in District 5.” The report, in the form of a letter, was addressed to Mrs. Drakes and also forwarded to Brown and to the Police Jury. On August 28, Jones *1281 filed the instant suit to declare Brown’s seat vacant.
At trial of the matter on September 25, various witnesses testified as to the facts outlined above. In addition, Brown offered documentary evidence that he paid all gas bills for the Ringgold Ave. apartment from April 2000 through August 2001, and used a Ringgold Ave. address on a voluntary petition in bankruptcy.[4] He also offered a motor vehicle registration certificate for a pickup truck he bought in June 2001; by listing his residence in Coushatta, he paid 1% more sales tax than had he used his wife’s Martin address.[5] Brown testified that at the time of trial, he had moved back into the apartment and still intended to find a nicer place for his | sfamily to live in District 5. Although he was out of the district temporarily, he testified that it was always his intention to retain his domicile in District 5. Mrs. Brown corroborated this, adding that a major source of their marital strife was his refusal to move out to Martin with her. In fact, no witness testified that Brown ever expressed any intent to leave District 5.
By “Reasons for Judgment” dated October 17, 2001, the District Court issued the one-sentence finding, “The evidence in this case is overwhelming that Little Jack Brown does not live in District Five of the Red River Police Jury districts.” The court therefore declared the office vacant. This appeal ensued.

Discussion

By his fourth assignment of error, Brown urges the District Court erred in failing to consider the presumptions regarding domicile and in failing to apply the law of domicile to the case sub judice. In support he cites Messer v. London, 438 So.2d 546 (La.1983), for the rule that a plaintiff challenging a police juror’s candidacy on the basis of domicile bears a heavy burden. He further argues that the laws governing the conduct of elections must be interpreted liberally so as to promote rather than defeat candidacy. Russell v. Goldsby, 00-2595 (La.9/22/00), 780 So.2d 1048. He urges that upon proper application of these principles, the court could not have found that he does not live in District 5. We agree.
Members of the police juries shall possess the same qualifications at the time of their election as members of the House of Representatives. La. R.S. 13:1225. Members of the legislature (including House members) must |fibe 18 years old, must have resided in the State for the preceding two years, “and been actually domiciled for the preceding year in the legislative district from which he seeks election!.]” La. Const. Art. 3, § 4(A). The seat of any legislator who changes his domicile from the district he represents “shall be vacated, any declaration of retention of domicile to the contrary notwithstanding.” La. Const. Art. 3, § 4(B).[6]
*1282 At oral argument, the parties conceded that Brown had his domicile in District 5 when he qualified for office, and there was really no dispute until February 2001 when the Adamses moved into his apartment. Since he met the domicile requirement of La. R.S. 33:1225, the only issue is whether he changed his domicile, thereby vacating his Police Jury seat.
Domicile is defined in La. C.C. art. 38 as the parish wherein each citizen has his principal establishment, which in turn is defined as “that in which he makes his habitual residence.” Domicile essentially consists of two elements: residence and intent to remain in place. Russell v. Goldsby, supra; Veillon v. Veillon, 517 So.2d 936 (La.App. 3 Cir.), writ denied 519 So.2d 105 (La.1987).
A change of domicile from one parish to another is defined in La. C.C. art. 41 as the act of residing in another parish, combined with the intention of making one’s principal establishment there. In the absence of a written declaration of intent, proof of change of domicile depends on the circumstances. La. C.C. arts. 42, 43. A change of domicile requires the 17physical presence of the person in the new domicile coupled with a present intent to reside permanently in the new domicile. Herpin v. Boudreaux, 98-306 (La.App. 3 Cir. 3/5/98), 709 So.2d 269, writ denied 98-0578 (La.3/11/98), 712 So.2d 859. A temporary relocation away from one’s established domicile does not result in a change of domicile without proof of intent to establish domicile elsewhere. In re Kennedy, 357 So.2d 905 (La.App. 2 Cir.1978); Peters v. Haley, 99-0866 (La.App. 1 Cir. 5/12/00), 762 So.2d 695, writ denied 00-1513 (La.6/30/00), 766 So.2d 547. There is a presumption against change of domicile. Id. The Supreme Court explained in Russell v. Goldsby:
The question of domicile is one of intention as well as fact, and where it appears domicile has- been acquired in another place, the party seeking to show that it has been changed must overcome the legal presumption that it has not been changed by positive and satisfactory proof of establishment of a domicile as a matter of fact with the intention of remaining in the new place and of abandoning the former domicile. Pattan v. Fields, 95-1936 (La.App. 1 Cir.1995), 669 So.2d 1233. Absent declaration to change domicile, proof of this intention depends upon circumstances; there is a presumption against change of domicile. Messer, 438 So.2d at 547; Herpin v. Boudreaux, [supra].
Moreover, this presumption prevails if the evidence leaves reasonable doubt as to the person’s intent to change domicile. Lacroix v. Lacroix, 32,293 (La.App. 2 Cir. 9/22/99), 742 So.2d 1036, writ denied 99-3036 (La.12/17/99), 752 So.2d 167; Succession of Lauricella, 571 So.2d 885 (La.App. 5 Cir.1990).
A public official who continues to discharge his duties is presumed to continue the domicile he had when elected. Messer v. London, supra; McClendon v. Bel, 00-2011 (La.App. 1 Cir. 9/7/00), 797 So.2d 700; Pattan v. Fields, supra.
The District Court’s factual findings regarding domicile are subject to manifest error review. Wand v. Wand, 155 La. 257, 99 So. 211 (1924); Steinhardt v. Batt, 00-0328 (La.App. 4 Cir. 2/11/00), 753 So.2d 928; Peters v. Haley, supra.
In its reasons for judgment of October 17, the District Court stated without elaboration that the evidence was “overwhelming that Little Jack Brown does not live in District Five of Red River Parish Police Jury districts.” The court obviously focused on the undisputed fact that for several months prior to the legal challenge, Brown had not stayed at his apartment in *1283 District 5, but was often at his wife’s trailer outside the district, or with relatives or friends. However, this observation does not address the burden of proof required to prove a change of domicile and the necessity of proving that Brown established another domicile elsewhere. We find too many undisputed facts weighing against the District Court’s conclusion.
This record shows that Brown and his wife were experiencing severe domestic difficulties; in November 2000, Ms. Brown obtained a TRO ordering Brown not to go within 100 yards of her residence. The documentary evidence also shows conclusively that Brown had no legal interest whatsoever in his wife’s trailer or the land on which it was immobilized; thus his ability to reside there was totally contingent on his wife’s forbearance, which is problematic on the testimony presented. The evidence also shows that Brown always paid the rent and utilities for the 19apartment on Ringgold Ave. No witness testified that Brown ever said he intended to change his domicile, and Brown directly contradicted this in his long-distance call to Mr. Fletcher in August and in his testimony at trial. He testified, without contradiction, that it is hard to find places to live in Coushatta; and because his wife refused to live in the Ringgold Ave. apartment, he intended to find a nicer place for his family to live in District 5, or else get a trailer and move it to Lake End, which is also in the District. In short, the evidence that Brown established a domicile elsewhere is far from “positive and satisfactory.” Russell v. Goldsby, supra.
Moreover, the evidence shows that Brown’s absence from the Ringgold Ave. apartment resulted, in part, from offshore employment and financial difficulties. Both Brown and Ms. Adams testified that the agreement for the Adamses to stay in the apartment for several months in 2001 was a convenience for both parties: Brown, who had to be away often, and the Adamses, who were in financial straits and could stay there rent-free. In re Kennedy, supra. Shortly after the Adamses vacated, Mr. Fletcher found some furniture in the apartment, but admitted that he “didn’t go completely through the house.” Finally, even while Brown was temporarily absent from his domicile, he continued to serve on the Police Jury; the undisputed testimony is that since his election, he has missed only one meeting. As in Messer v. London, supra, this “strongly negates” any intention to change his domicile.
In the final analysis, this case concerns the adequacy of the objective proof of Brown’s subjective intent. The record creates a reasonable factual |10basis for a finding that Brown temporarily resided away from his apartment on Ringgold Ave., either at his wife’s mobile home, his grandmother’s or friends’ homes, or working offshore. However, the District Attorney owed a burden of “positive and satisfactory” proof that Brown subjectively intended to take up permanent residence outside the district and abandon his domicile in District 5. Even with the broad discretion accorded the fact finder, we are constrained to find that the evidence does not meet this burden. On this record, there is considerable doubt concerning Brown’s alleged change of domicile. For these reasons, the judgment will be reversed, and judgment rendered in favor of the defendant, rejecting the petition to declare a vacancy.
In light of this conclusion, we pretermit any discussion of Brown’s first three assignments of error, which address alleged procedural errors in the trial.[7]

Conclusion

The judgment of the District Court is REVERSED, and judgment is RENDERED herein, in favor of the defendant, Little Jack Brown, and dismissing the petition to declare his seat on the Police Jury *1284 vacant. Costs are not assessed. La. R.S. 13:4521.
REVERSED AND RENDERED.
BROWN, J., dissents with reasons to follow.
GASKINS, J., dissents.

. See, <http://www.sec.state.la.us/cgi-bin/?rqstyp=ELCPR & rqsdla=l 1209941>.

. The witnesses and documents variously described this as being on Route 2 or on Route 5.

. The electricity was actually in his mother's name because of a prior billing dispute with CLECO.

. This document is undated and actually lists the street address as "1604 Ringold Ave.” Brown testified that he always used his post office box as his mailing address and thus sometimes made errors in writing his street number.

. This document actually lists his address as “721 Clarkson,” a prior address which, according to Brown, was still in the credit union's computer.

. The requirement that candidates for police jury possess the same qualifications at the time of their election as members of the House of Representatives arguably adopts only the constitutional requirements for qualifications as a legislative candidate found in Art. 3, § 4(A), and not the change of domicile provisions of Art. 3, § 4(B), that apply to legislators after the time of their qualification and election. Neither party has raised this issue, and in light of our ultimate conclusion on the merits of this case, we mention it only to note that any clarification would be best resolved by amendment of R.S. 13:1225.

. The author of this opinion wishes to add that had the court addressed these assignments, he would also have reversed the judgment on grounds that the District Attorney did not substantially comply with the mandatory procedures of R.S. 18:673 and 18:674B.