WILLIAMS, J.
| Jn this community property partition litigation, William Scott Carroll (“Scott”) appeals a trial court’s decision, awarding Lisa Kay Carroll nee Tippen (“Lisa”) reimbursement in the amount of $50,000 for community funds expended to make improvements to Scott’s separate property. Scott also appeals the denial of his claims for reimbursement for the use of community funds to pay the mortgage on Lisa’s separate property, Lisa’s “mismanagement” of Scott’s separate property, and utilizing his separate funds to pay community tax obligations. Additionally, Scott appeals the trial court’s determination that Lisa was owed an equalizing payment in the amount of $5,000.
For the following reasons, we reverse the court’s denial of Scott’s reimbursement claim for the payment of the community tax obligation with separate funds, and we award Scott reimbursement in the amount of $4,651. We also amend the court’s calculation of the equalizing payment due to Lisa to reflect that Scott owes an equalizing payment to Lisa in the amount of $2,500. All other aspects of the judgment are hereby affirmed.
*103 FACTS
Scott and Lisa were married on March 19, 2001. One child, William Scott Carroll, Jr., was born during the marriage. On August 9, 2005, Lisa filed a petition for divorce. Subsequently, a judgment of divorce was granted, terminating the community of acquets and gains retroactive to the date of filing the petition for divorce.
On July 16, 2007, Lisa filed a petition for partition of the parties’ community property, along with a detailed descriptive list of the assets of the community. Thereafter, Lisa filed a supplemental and amending sworn detailed ^descriptive list, setting forth multiple reimbursement claims. Subsequently, Scott also filed a sworn detailed descriptive list and made numerous claims for reimbursement.
On March 2, 2010, a preliminary hearing was held to determine the parties’ community property and reimbursement claims. The hearing officer prepared a report and made recommendations, to which both parties objected. Consequently, a trial was held on July 1, 2010. After hearing the testimony and reviewing the hearing officer’s recommendations, as well as the evidence presented at trial, the trial court found that the net value of the community was $78,504. The court allocated the community property as follows:
Scott — $41,752 (½ net proceeds from the sale of the family home and Scott’s custom motorcycle);
Lisa — $36,752 (½ net proceeds from the sale of the family home and Lisa’s Chevrolet Tahoe);
$5,000 was due to Lisa from Scott to equalize the community property ($41,-752-$36,752).
The court concluded that net community payment due to Lisa was $41,752 ($36,752 + $5,000). The court also granted various reimbursement claims urged by both Scott and Lisa. After balancing and offsetting the claims, the court awarded Lisa reimbursement in the amount of $32,414.75. The court further ordered $12,533.62, from Scott’s portion of proceeds from the sale of. the house, to be held in escrow to “catch up support arrearages.” The court ordered the remainder of Scott’s portion of the proceeds from the sale of the house “to be paid out of the escrow community funds to Lisa forthwith.” Scott was also ordered to pay the balance due to Lisa, $33,216.75, plus interest, within 60 days.
I a As stated above, the court also granted some of the parties’ claims for reimbursement and denied others. Namely, the court awarded Lisa reimbursement in the amount of $50,000 for community property funds expended to purchase land and erect a building owned by Chassis, Inc. (Scott’s separate property); denied Scott’s reimbursement claim for the use of his separate' funds to pay community tax obligations; denied Scott’s reimbursement claim for the use of community funds to pay the mortgage on a house owned by Lisa (Lisa’s separate property) for approximately 15 months during the marriage; and denied Scott’s reimbursement claim for Lisa’s “mismanagement” of property owned by Chassis, Inc.
Subsequently, the trial court denied Scott’s motion for new trial. Scott appeals.
DISCUSSION

Use of Community Funds to Build or Make Improvements to Separate Property

Scott contends the trial court erred in awarding Lisa reimbursement in the amount of $50,000, for community property funds expended to purchase land and erect a building owned by Chassis, Inc. (a company Scott owned prior to his marriage to Lisa). Scott concedes that he made certain improvements, including the construe *104 tion of a building; however, he asserts that the court disregarded his testimony that he did not use any community funds to construct the building and/or make improvements. Additionally, Scott asserts that Lisa’s claim for reimbursement relates to a “building [or] other constructions permanently attached to the ground” under LSA-C.C. art. 2366. However, because Chassis, Inc., not Scott, is “the owner of the ground” on which the | ¿improvements were made, Lisa is not entitled to reimbursement.
LSA-R.S. 9:2801 provides, in pertinent part:
A. When the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising either from the matrimonial regime, or from the co-ownership of former community property following termination of the matrimonial regime, either spouse, as an incident of the action that would result in a termination of the matrimonial regime or upon termination of the matrimonial regime or thereafter, may institute a proceeding, which shall be conducted in accordance with the following rules:
[[Image here]]
(4) The court shall then partition the community in accordance with the following rules:
(a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.
(b) The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.
(c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.
(d)In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security.
⅜ *
Generally, the property of married persons domiciled in Louisiana is either community or separate. LSA-C.C. art. 2335. The community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property under Article 2341; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property. LSA-C.C. art. 2338. Wages are the premier community asset acquired through the effort, skill or industry of either spouse. Ross v. Ross, 2002-2984 (La.10/21/03), 857 *105 So.2d 384; Gill v. Gill, 39,406 (La.App.2d Cir.3/9/05), 895 So.2d 807.
LSA-C.C. art. 2341 provides:
The separate property of a spouse is his exclusively. It comprises: property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse ■with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; property acquired by a spouse by inheritance or donation to him individually; damages awarded to a spouse in an action for breach of contract against the other spouse or for the loss sustained as a result of fraud or bad faith in the management of community property by the other spouse; damages or other indemnity awarded to a spouse in connection with the management of his separate property; and things acquired by a spouse as a result of a voluntary partition of the community during the existence of a community property regime.
It is well settled that a trial court has broad discretion in adjudicating issues raised by divorce and partition of the community. Clemons v. Clemons, 42,129 (La.App.2d Cir.5/9/07), 960 So.2d 1068, writ denied, 2007-1652 (La.10/26/07), 966 So.2d 583; Mason v. Mason, 40,804 (La.App.2d Cir.4/19/06), 927 So.2d 1235, writ denied, 2006-1524 (La.10/13/06), 939 So.2d 366. A trial judge is afforded a great deal of latitude in arriving at an equitable distribution of the assets between the spouses. Id. Factual findings and credibility determinations made in the course of valuing and allocating assets and liabilities in the partition of community property may not be set aside absent manifest error. Clemons, supra. However, the allocation or assigning of assets and liabilities in the partition of community property is reviewed under the abuse of discretion standard. Benoit v. Benoit, 2011-0376 (La. App. 1st Cir.3/8/12), 91 So.3d 1015; Legaux-Barrow v. Barrow, 2008-530 (La.App. 5th Cir.1/27/09), 8 So.3d 87, writ not considered, 2009-0447 (La.4/13/09), 5 So.3d 152.
LSA-C.C. art. 2366 provides:
If community property has been used during the existence of the community property regime or former community property has been used thereafter for the acquisition, use, improvement, or benefit of the separate property of a spouse, the other spouse is entitled to reimbursement for one-half of the amount or value that the community property had at the time it was used. Buildings, other constructions permanently attached to the ground, and plantings made on the separate property of a spouse with community property belong to the owner of the ground. The other spouse is entitled to reimbursement for one-half of the amount or value that the community property had at the time it was used.
As stated above, Scott owned Chassis, Inc., before he married Lisa. However, it is undisputed that the land was purchased and the building was |7constructed during the marriage. Scott testified that he paid $100,000 for the land and that funds were obtained from the sale of his separate property (a race car and other “racing stuff’). Although the record indicates that Seott/Chassis, Inc., obtained construction loans to erect the building, Scott testified that he invested approximately $100,000 “in cash” in the building. He stated that he kept the $100,000 locked in his shop; he never deposited any of the funds in his business account or his personal accounts. Other than his testimony, Scott offered no evidence as to the source *106 of the $100,000. There is nothing in the record to prove that the funds were not “acquired during the existence of the legal regime through the effort, skill, or industry” of Scott. As such, the trial court concluded that Scott presented no evidence to overcome the presumption that the $100,000 in cash, used “for the acquisition, use, improvement, or benefit” of Scott’s separate property, was community funds.
We agree. We have reviewed this record in its entirety. As the trial court noted, Scott produced documents to prove that a portion of the costs of the improvements to his separate property was paid with funds from a construction loan. However, no documents were presented to overcome the presumption that the $100,000 invested in the building was community property. Accordingly, we find that the trial court did not err in concluding that Lisa was entitled to reimbursement in the amount of $50,000 for the use of community funds for improvements made to Scott’s separate property. This assignment lacks merit.

Use of Community Funds to Pay Mortgage on Separate Property

|sScott also contends the trial court erred in denying his reimbursement claim, in the amount of $9,870, for the use of community funds to pay the mortgage on a house owned by Lisa (Lisa’s separate property) during the marriage. He argues that the mortgage on the house, approximately $658 per month, was paid with community funds for a period of 15 months. Thus, he is entitled to reimbursement in the amount of $4,985 (½ of the $9,870 paid).
A separate obligation of a spouse is one incurred by that spouse prior to the establishment of a community property regime, or one incurred during the existence of a community property regime though not for the common interest of the spouses or for the interest of the other spouse. LSA-C.C. art. 2363. If community property has been used during the existence of the community property regime or former community property has been used thereafter to satisfy a separate obligation of a spouse, the other spouse is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. LSA-C.C. art. 2364.
In the instant case, Scott testified he “spent some money on [the house owned by Lisa].” He stated that community funds, in the amount of $658 per month, for a period of 15 months, were used to pay the mortgage on that house. To support his claim, Scott introduced into evidence a copy of one cancelled check, dated March 5, 2002, in the amount of $658.35; the check was made payable to the company which held the mortgage to the house.
Our review of the testimony reveals that Lisa, Scott, their son and Lisa’s three daughters from her first marriage lived in the house from March, 2001, until approximately November, 2002. The documents and testimony indicate |9that Scott and Lisa maintained separate bank accounts, in addition to one joint checking account. Lisa and Scott testified that Scott routinely gave her approximately $2,800 in cash per month to “pay the bills.” However, Lisa, who stopped working in 2002, testified that the amount given to her by Scott was insufficient to meet the community obligations. Therefore, Lisa frequently deposited her separate funds into the joint account to meet the obligations of the community.[1] Scott produced no evidence to *107 definitively prove that community funds, rather than Lisa’s separate funds, were used to pay the mortgage on Lisa’s house. Based on this record, it impossible to ascertain whether the mortgage on Lisa’s house was paid with community funds or with Lisa’s separate funds, deposited into the joint account. For these reasons, we find that the trial court did not abuse its discretion in concluding that Scott is not entitled to reimbursement in the amount of $4,935. This assignment lacks merit.

“Mismanagement” of Separate Property

Next, Scott contends the trial court erred in denying his reimbursement claim for Lisa’s improper release of property from Chassis, Inc., and the mismanagement of property owned by the company. Scott argues that he is entitled to reimbursement in the amount of $64,764.
Scott testified that while he was in jail and/or an inpatient drug rehabilitation treatment program, Lisa, without his knowledge or authorization, entered Chassis, Inc. He stated that while there, Lisa released three vehicles to | incustomers, and she released equipment and parts from the company without fully collecting the amounts owed. He also stated that Lisa collected $17,525.28 from the customers, when the amount owed totaled $64,764. Further, Scott testified that Lisa deposited only $8,014.28, into Scott’s business account, without accounting for the remainder.
A spouse owes an accounting to the other spouse for community property under his control at the termination of the community property regime. LSA-C.C. art. 2369. A spouse has a duty to preserve and to manage prudently former community property under his or her control, including a former community enterprise, in a manner consistent with the mode of use of that property immediately prior to termination of the community regime. He or she is answerable for any damage caused by his or her fault, default, or neglect. LSA-C.C. art. 2369.3.
To support his reimbursement claim, Scott introduced into evidence a typed document, dated July 27, 2005, entitled, “Cars Lisa Released from Chassis, Inc.” The document was not signed; therefore, the source of the document is unknown. Scott also introduced into evidence an undated typed document, generated by Lisa, which stated that she collected $17,525.28 from customers and “paid out” $4,865 for various business expenses. The document included the following statement:

I deposited $8,011.28 into Chassis Inc. on July 28th.

I kept the rest of the collected funds to pay household bills for however long it last[s]. Scott withdrew $5000 cashiers check from bank which made the Chassis Inc. Account overdrawn by 3035.62.
After reviewing the documents, the hearing officer stated:
|n[A]s Chassis, Inc. is a corporation, any claim that might exist as a result of Lisa releasing cars without authorization would belong to the corporation rather than to Scott individually.
As there is no showing to support the validity of this claim and, as to any extent it is valid, it would appear to be a claim of the corporation, I recommend that this claim for reimbursement be denied.
The trial court denied Scott’s claim “for the reasons stated by the hearing officer.”
We agree. The personality of a corporation is distinct from that of its members. See, LSA-C.C. art. 24. Only the corporation, not its members, may sue *108 to recover any damages it has sustained. Skannal v. Bamburg, 44,820 (La.App.2d Cir.1/27/10), 38 So.3d 227, writ denied, 2010-0707 (La.5/28/10), 36 So.3d 254; Taylor v. Dowling Gosslee & Assoc., 44,654 (La.App.2d.Cir.l0/7/09), 22 So.3d 246. A shareholder has no separate or individual right of action against third persons for wrongs committed against or damaging to the corporation. Skannal, supra, citing Glod v. Baker, 2002-988 (La.App. 3d Cir.8/6/03), 851 So.2d 1255, writ denied, 2003-2482 (La.11/26/03), 860 So.2d 1135. This same rule applies even where one person may be the sole shareholder. Skannal, supra; Taylor; supra.
Based on this record, we find that Chassis, Inc., is the proper party to bring the action against Lisa for any alleged wrongs committed against the corporation. Accordingly, the trial court did not err in denying Scott’s claim for reimbursement.

Use of Separate Property to Pay Community Tax Obligation

Scott also contends the trial court erred in denying his reimbursement claim for the use of his separate funds to pay community tax obligations for the 2002 and 2003 tax years. He argues that $10,635.61 of his separate funds were used to pay the community income taxes; therefore, he is entitled to reimbursement in the amount of $5,317.80.
If separate property of a spouse has been used either during the existence of the community property regime or thereafter to satisfy a community obligation, that spouse is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. LSA-C.C. art. 2365. The burden of proof is on the party claiming reimbursement to show that separate funds existed and were used to satisfy the community obligation. Dupree v. Dupree, 41,-572 (La.App.2d Cir.12/20/06), 948 So.2d 254; Ward v. Ward, 32,617 (La.App.2d Cir.12/10/99), 748 So.2d 619.
Scott did not introduce any of the tax returns into evidence. However, to support his reimbursement claim, Scott testified that his income tax refunds were seized to pay community tax debts. Lisa admitted that she did not pay any of the community tax obligations.
Additionally, Scott introduced into evidence letters from the Department of the Treasury, Internal Revenue Service (“IRS”), which indicate that his income tax refunds from his 2007 and 2008 tax returns were seized and applied to unpaid balances “of other federal taxes which our records show you owe.”[2] [ lsOne letter from the IRS, dated July 7, 2008, provides, in part:
We applied $1,820.00 of the overpaid tax on your 2007 tax return to the unpaid balance of other federal taxes which our records show you owe.
[[Image here]]
Where We Applied Your Overpayment
Forms(s) Tax Period(s) Amount(s) Applied
1040 December 31,2002 $1,820.00
Balance Remaining
$5,038.78
*109 Another letter, dated July 14, 2008, states, m Park
We applied $800.00 of the overpaid tax on your 2007 tax return to the unpaid balance of other federal taxes which our records show you owe.
* * *
Where We Applied Your Overpayment
Forms(s) Tax Period(s) Amount(s) Applied
1040 December 31,2002 $300.00
Balance Remaining
$4,743.18
Another document, which does not bear a date,[3] states:
Our records show you owe Federal taxes. Your overpayment was applied as follows:
Tax Forms(s) Amount Applied Tax Period(s)
1040 $4,117.00 December 31, 2002
Balance Remaining
_j_i4$784.08
The next letter, dated October 26, 2009, states, in pertinent part:
We applied $3,065 of the overpaid tax on your [2008] tax return to the unpaid balance of other federal taxes which our records show you owe.
[[Image here]]
Where We Applied Your Overpayment
Forms(s) Tax Period(s) Amount(s) Applied
1040 December 31, 2003 $2,671.17
1040 December 31, 2004 $394.05
Although Scott did not submit the tax returns, the language from the documents clearly indicates that Scott’s income tax refunds were applied to tax debts owed for 2002, 2003 and 2004 tax periods. It is undisputed that Scott and Lisa were married during the tax periods listed in the IRS documents. Additionally, as stated above, Lisa admitted that she did not pay any of the tax debt owed, other than the amount withheld from sale of the house.
After reviewing the record and supporting documents, we find that Scott satisfied his burden of proving that $9,302 of his separate funds (his income tax refunds) were used to satisfy the community income tax obligation. Therefore, we find that, pursuant to LSA-C.C. art. 2365, Scott is *110 entitled to reimbursement for one-half of the amount paid ($4,651).

Calculation of the Equalizing Payment Due to Lisa

Scott also contends the trial court erred “in its mathematical calculation in determining the equalizing payment due from Scott Carroll to Lisa Carroll.” Scott argues that the court failed to divide the difference between each party.
In the event that the allocation of assets and liabilities results in an |15unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. LSA-R.S. 9:2801(A)(4)(d).
In the instant case, the court determined that Scott’s net portion of the community property allocation was $41,752; the court calculated that Lisa’s net portion was $36,752. The court correctly calculated the difference to be $5,000. However, the court incorrectly awarded the entire $5,000 difference to Lisa, thereby awarding Lisa a net portion of $41,752, and Scott $36,752. Thus, we find that the equalizing payment due to Lisa was incorrectly calculated. Accordingly, we amend the trial court’s judgment to reflect that Scott owes an equalizing payment to Lisa in the amount of $2,500.
CONCLUSION
For reasons set forth herein, we reverse the court’s denial of Scott’s reimbursement claim for the payment of the community tax obligation with separate funds, and we order Scott’s reimbursement in the amount of $4,651. We also amend the court’s calculation of the equalizing payment due to Lisa to reflect that Scott owes an equalizing payment to Lisa in the amount of $2,500. All other aspects of the judgment are hereby affirmed. Costs of this appeal are assessed equally to the parties, William Scott Carroll, Sr. and Lisa Kay Carroll nee Tippen.
REVERSED IN PART; AMENDED IN PART; AND AFFIRMED AS AMENDED.

. Lisa introduced into evidence copies of multiple checks given to her by her mother. Some of the funds were given as "gifts.” Lisa also deposited a check given to her from *107 proceeds from the sale of timber from land owned by Lisa's family.

. Apparently, Scott did not file any documents from the IRS relating to the community tax obligation prior to the hearing before the hearing officer. Nor did he file any can-celled checks or other evidence which might prove that he paid the tax debt from his separate funds. As a result, the hearing officer recommended that the reimbursement claim be denied based on lack of documentary evidence to support the claim. The only documents presented to the hearing officer proved that a federal tax lien was attached to the parties’ family home to satisfy unpaid tax debts. The documents also indicated that the lien was released after the family home was sold and a sum of $2,787.93, was paid with a portion of the proceeds from the sale of the house.

. This communication is actually “Page 3” of a document from the IRS. The communication does not bear a name; however, Scott’s social security number is listed at the top of the document.