Judgment rendered September 22, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,034-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

BARON T. DRAYTON                                   Plaintiff-Appellant

versus

SEGEN MESMER-DRAYTON                         Defendant-Appellee

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 116807

Honorable Charles A. Smith, Judge

* * * * *

HESSER & FLYNN, LLP                              Counsel for Appellant
By: David C. Hesser

THE MARLER LAW FIRM, LLC                  Counsel for Appellee
By: Hannah Marler

LAW OFFICE OF KELLY L. LONG
By: Kelly L. Long

* * * * *

Before STONE, STEPHENS, and HUNTER, JJ.

**HUNTER, J.**

This appeal arises as a dispute over valuations assigned by the trial court in a partition of community assets formerly existing between plaintiff/appellant, Baron T. Drayton, and defendant/appellee, Segen Mesmer-Drayton. [1] For the following reasons, we affirm in part, reverse in part, and remand with instructions.

## FACTS

Plaintiff/appellant, Baron T. Drayton ("Drayton"), is a retired member of the United States Air Force ("USAF"). Drayton is a native of Greenville, Mississippi, and he enlisted in the USAF on September 11, 1989, and was stationed at Ramstein Air Force Base in Germany. While in Germany, Drayton met defendant/appellee, Segen Mesmer-Drayton ("Mesmer-Drayton"), who was a German National. The parties began living together in Kaiserslautern, Germany, and they subsequently married on June 27, 1997.[2]

In October 2002, the USAF issued a "Permanent Change of Station" and transferred Drayton to Barksdale Air Force Base in Bossier City, Louisiana. The parties purchased a house on Le Oaks Drive in Bossier City and established their domicile in Louisiana. The couple resided together in Bossier City until they separated in May 2004.

Drayton filed a petition for divorce on April 7, 2005, alleging he was a domiciliary of Louisiana. He also alleged he and Mesmer-Drayton had "voluntarily lived separate and apart since on or about May 10, 2004." The

---

[1] In some portions of the record, defendant's name is spelled "Segen"; in other portions, it is spelled "Segan."

[2] The parties had two children, both of whom have reached the age of majority.

judgment of divorce was granted on October 27, 2005; a final judgment of divorce was signed on November 28, 2005. Drayton was awarded exclusive use of the matrimonial domicile and was ordered to pay child and spousal support to Mesmer-Drayton. The judgment of divorce reserved the rights of both parties to future reimbursement claims.

Following the separation, Drayton continued to live in the former matrimonial domicile approximately five years. In January 2011, he leased the house to a tenant, collected rent, and allegedly continued to pay the monthly mortgage in the amount of $1,262.53. The tenant died in January 2013, and, according to Drayton, left the house in disrepair and "unlivable." In June 2013, Drayton moved to Texas and enlisted his neighbors to assist him in monitoring and maintaining the house. Drayton maintained he attempted to sell the house, but he never listed it for sale, and the house remained empty from January 2013 until January 2020.

Over the years, both parties have filed multiple petitions to partition the community property with detailed descriptive lists.[3] However, the proceedings stalled due to numerous delays and changes in legal representation by both parties.

On December 5, 2018, Drayton filed the instant Petition to Partition the Community Property and Detailed Descriptive List. On February 12, 2019, a judgment was entered terminating the community property regime retroactive to October 27, 2005 (the original petition for divorce was filed

---

[3] On May 26, 2006, Mesmer-Drayton filed a petition for partition of community property. On January 17, Drayton filed a petition for judicial partition of community property and detailed descriptive list. On September 3, 2008, Drayton filed a second petition for judicial partition of community property and a second detailed descriptive list. On November 5, 2008, Mesmer-Drayton filed a detailed descriptive list. On December 18, 2013, Mesmer-Drayton filed another petition to partition community property and rule to show cause.

2

April 7, 2005; the judgment of divorce was granted October 27, 2005).

Despite the error in the judgment, the trial judge and all counsel of record

signed the judgment, and it was filed into the record.[4]

A trial on the partition was held September 21, 2020. After hearing

the testimony and reviewing the evidence, the trial court rendered judgment

as follows:

> IT IS HEREBY ORDERED that effective October 2013 and continuing each month thereafter, SEGEN MESMER DRAYTON is awarded 17.36 percent (currently $423.57) of BARON T. DRAYTON'S net disposable military retired pay. Accruing the monthly amount due from October 2013 through September 2020, BARON T. DRAYTON owes unto SEGEN MESMER DRAYTON the aggregate sum of $35,579.88.
>
> IT IS FURTHER ORDERED that beginning October 30, 2020, [BARON] T. DRAYTON is to forward directly to SEGEN MESMER DRAYTON 17.36 percent (currently $423.57 per month) representing her community share of his net disposable military retired pay. This payment is due by the 30th calendar day each month.
>
> IT IS FURTHER ORDERED that BARON T. DRAYTON shall receive a credit against the $35,579.88 owed to SEGEN MESMER DRAYTON in the amount of $5,581.80. This amount represents one half of the reduction in principal on the mortgage associated with the former matrimonial domicile for the mortgage payments made from February 2013 until January 2020. For the period of time from April 7, 2005 until January 2013, BARON T. DRAYTON was not awarded reimbursement for payment of the mortgage and SEGEN MESMER DRAYTON was not awarded rental reimbursement as those amounts were found to be equal claims offsetting each other.
>
> IT IS FURTHER ORDRED that BARON T. DRAYTON shall receive a credit against the $35,579.88 owed to SEGEN MESMER DRAYTON in the amount of $1,733.80. This amount represents one half of costs of repairs to the former matrimonial domicile that are accepted by the court.

---

[4] Thereafter, Mesmer-Drayton filed a detailed descriptive list and traversed the detailed descriptive list filed by Drayton. On September 4, 2020, Drayton filed an amended and supplemental descriptive list and traversal.

IT IS FURTHER ORDERED that the funds held in Magnolia Title escrow account in the amount of $24,964.45 shall be distributed to SEGEN MESMER DRAYTON. BARON T. DRAYTON shall receive credit against the $35,579.88 owed to SEGEN MESMER DRAYTON in the amount of $12,482.23. This amount represents one half of the proceeds from the sale of the former matrimonial domicile.

***

Drayton now appeals.

## DISCUSSION

Drayton contends the trial court erred in finding the parties, who were not domiciled in Louisiana for the first five years of their marriage, were subject to Louisiana's community property regime prior to becoming domiciled in the state. He argues he and Mesmer-Drayton did not establish a domicile in Louisiana until they moved here in October 2002. According to Drayton, the military retirement he earned from June 1997, until October 2002, are subject to the laws of Mississippi, his state of origin, or to the laws of Germany, the country where the parties were married and initially resided.

10 U.S.C.A. § 1408(c) provides, in pertinent part:

(1) Subject to the limitations of this section, a court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court. ***
***
(4) A court may not treat the disposable retired pay of a member in the manner described in paragraph (1) unless the court has jurisdiction over the member by reason of (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court.
***

The legal regime of community of acquets and gains applies to spouses domiciled in this state, regardless of their domicile at the time of

4

marriage or the place of celebration of the marriage.  La. C.C. art. 2334.  The

Official Revision Comments to Article 2334 provides in part:

***

> (b) Under this provision, spouses not domiciled in Louisiana at the time of their marriage become subject to the provisions of this article *from the moment they become Louisiana domiciliaries*.  *** (Emphasis added).

A serviceman's domicile, once established, does not change merely

because of his move of physical residence while in the service of his

country.  *Messer v. London*, 438 So. 2d 546 (La. 1983); *Blackwell v.*

*Blackwell*, 606 So. 2d 1355 (La. App. 2 Cir. 1992).  A person's domicile of

origin continues until another is acquired.  *Blackwell*, *supra*; *In re*

*Kennedy*, 357 So. 2d 905 (La. App. 2 Cir. 1978).  A change in domicile

requires the physical presence of the individual in the new domicile coupled

with a present intent to permanently reside in the new domicile. *Messer*,

*supra*; *Blackwell*, *supra*.  A serviceman may abandon his domicile and

establish a new one upon complying with the two prongs set forth in *Messer*

*v. London*, *supra*, *i.e.*, physical presence and intent to remain

permanently.  *Blackwell*, *supra*; *Howard v. Howard*, 499 So. 2d 222 (La.

App. 2 Cir. 1986).

In the instant case, Drayton's "domicile of origin" was Greenville,

Mississippi.  Although Drayton was stationed in Germany from 1989 until

2002, there is no evidence or assertion he changed his domicile to Germany.

Based on the pleadings filed in this case, Drayton became domiciled in the

State of Louisiana.  However, that event did not occur until he was

transferred to Barksdale AFB in October 2002.  Thus, Drayton became

subject to Louisiana's community property regime when he became

domiciled in Louisiana in October 2002.  As a result, we find Louisiana

5

community property law controls the classification of Drayton's military retirement benefits beginning October 2002, and the law of the State of Mississippi, Drayton's domicile of origin, controls the classification of the retirement benefits from the time the parties married on June 27, 1997, until they became domiciled in Louisiana in October 2002.

Mississippi is a not a community property state. *McLaurin v. McLaurin*, 853 So. 2d 1279 (Miss. 2003); *Owen v. Owen*, 798 So. 2d 394 (Miss. 2001). To offset the inequities which often result in a separate property regime, the Mississippi Supreme Court has adopted the theory of "equitable distribution" to divide marital assets after the dissolution of a marriage. *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994); *Draper v. Draper*, 627 So. 2d 302 (Miss. 1993). In *Ferguson*, *supra*, the Mississippi Supreme Court described the doctrine of equitable distribution as follows:

> While the issue can be simply stated, it is impossible to give a precise definition to the phrase "equitable distribution." Basically, the doctrine refers to the authority of the courts to award property legally owned by one spouse to the other spouse, and recognizes that a non-working spouse's efforts contribute to the acquisition of the marital estate. *Divorce-Equitable Distribution,* 41 ALR 4th 481, 484. Under the equitable distribution system, the marriage is viewed as a partnership with both spouses contributing to the marital estate in the manner which they have chosen.

*Id.*, fn. 4.

Under Mississippi law, the chancery court[5] has the authority to order an equitable division of property that was accumulated through the joint efforts and contributions of the parties. *Ferguson*, *supra*; *Brown v. Brown*, 574 So. 2d 688 (Miss. 1990). However, there is no automatic right

---

[5] In Mississippi, chancery courts have jurisdiction over non-jury disputes involving "equity," such as divorces and other domestic matters.

to an equal division of jointly-accumulated property, but rather, the division is left to the discretion of the court. *Gerty v. Gerty*, 296 So. 3d 704 (Miss. 2020); *Sproles v. Sproles*, 782 So. 2d 742 (Miss. 2001). Mississippi courts utilize the following factors in evaluating the division of marital assets:

1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:

   a. Direct or indirect economic contribution to the acquisition of the property;
   b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
   c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.

2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.

3. The market value and the emotional value of the assets subject to distribution.

4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,

8. Any other factor which in equity should be considered.

*Ferguson*, *supra*.

In *Hemsley v. Hemsley*, 639 So. 2d 909 (Miss. 1994), the chancery court awarded 50% of the former husband's military retirement and civil service retirement benefits to the former wife. The chancery court stated:

> The wife contributed her share by rocking the cradle, keeping the house, and caring for the children. Although the husband was bringing in the income, still marriage is pretty much a 50/50 partnership as to property acquired during the marriage regardless of the role played by the parties. Certainly, we recognize that Mississippi is not a community property state, but many of our cases indicate that the Court still should make an equitable division of the property acquired during the marital relationship. Equity means equal fairness.

*Id*. at 914. The Mississippi Supreme Court found the chancery court did not err, stating:

> [T]oday in acquiring a marital estate, courts cannot tell who is the most important, the man or the woman. Presently the law often deals with a fiction that the parties are deemed to enter into marriage with two separate estates. Most parties enter into marriage with no estate and proceed to build an estate together. Therefore, in the event of a divorce, there is more often than not one estate. If the breadwinner happens to be the husband and has all property in his name, this serves to relegate the non-breadwinner wife to the equivalent of a maid—and upon division of the marital estate entitled to a minimum wage credit for her homemaking service. We abandon such an approach.
>
> We, today, recognize that marital partners can be equal contributors whether or not they both are at work in the marketplace.
>
> We define marital property for the purpose of divorce as being any and all property acquired or accumulated during the marriage. Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor. We assume for divorce purposes that the contributions and efforts of the marital partners, whether economic, domestic or otherwise are of equal value.

*Id*., at 915.

In *Young v. Young*, 796 So. 2d 264 (Miss. Ct. App. 2001), the chancery court conducted a *Ferguson* analysis and awarded to the former wife 25% of the former husband's military retirement benefits, and 100% of

8

her 401K retirement. The former husband appealed, arguing the distribution of the property was inequitable. The court of appeal affirmed, stating:

> This was a difficult position for both parties to be placed, however, there was very little to distribute. [The chancery court] equitably divided all of their property, including the marital home, retirement accounts and personal items, with the Ferguson factors and established case law in mind. The chancellor committed no error.

*Id.*, at 268.

In the instant case, both Drayton and Mesmer-Drayton testified at trial, and their testimony primarily centered around the house, the cost of the mortgage, and costs associated with repairing and maintaining the house. However, the record is completely devoid of evidence pertaining to Mesmer-Drayton's contribution to the marriage, the family relationships, family duties, or the accumulation of the marital assets. Consequently, based on our finding that the parties did not become subject to Louisiana's community property regime until they became domiciled in Louisiana in October 2002, we reverse the trial court's judgment as it relates to the amount of military retirement benefits to which Mesmer-Drayton is entitled. We remand this matter to the trial court with instructions to conduct an evidentiary hearing to equitably distribute Drayton's military retirement benefits, from June 27, 1997, until October 2002, in accordance with Mississippi law, applying the factors set forth in *Ferguson*, *supra*, and other relevant Mississippi statutes and jurisprudence.

Drayton also contends the trial court erred in calculating his reimbursement claim for the payment of the community mortgage debt. He argues he used his separate funds to pay the mortgage from January 2013 until the house was sold in January 2020, and Mesmer-Drayton admitted she

9

did not contribute to the payment of the mortgage. According to Drayton, he is entitled to reimbursement for one-half of the $45,252.76 he paid toward the mortgage on the former matrimonial domicile.

The burden of proof is on the party claiming reimbursement to show that separate funds existed and were used to satisfy the community obligation. *Bulloch v. Bulloch*, 51,146 (La. App. 2 Cir. 1/18/17), 214 So. 3d 930; *Tippen v. Carroll*, 47,415 (La. App. 2 Cir. 9/20/12), 105 So. 3d 100. Where separate funds can be traced with sufficient certainty to establish the separate ownership of the property paid for with those funds, the separate status of such property will be upheld. *Curtis v. Curtis*, 403 So. 2d 56 (La. 1981); *Bulloch*, *supra*.

It is well settled a trial court has broad discretion in adjudicating issues raised by divorce and partition of the community. A trial judge is afforded a great deal of latitude in arriving at an equitable distribution of the assets between the spouses. Factual findings and credibility determinations made by the trial court in the course of valuing and allocating assets and liabilities in the partition of community property may not be set aside absent manifest error. *Flowers v. Flowers*, 52,506 (La. App. 2 Cir. 2/27/19), 266 So. 3d 435; *Politz v. Politz*, 49,242 (La. App. 2 Cir. 9/10/14), 149 So. 3d 805; *Mason v. Mason*, 40,804 (La. App. 2 Cir. 4/19/06), 927 So. 2d 1235, *writ denied*, 2006-1524 (La. 10/13/06), 939 So. 2d 366.

The court shall determine the community assets and liabilities; the valuation of assets shall be determined at the trial on the merits. La. R.S. 9:2801(A)(2). The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties. La. R.S. 9:2801(A)(4)(a). The court shall divide the community assets and

10

liabilities so that each spouse receives property of an equal value. La. R.S. 9:2801(A)(4)(b). The court shall allocate or assign to the respective spouses all of the community assets and liabilities. La. R.S. 9:2801(A)(4)(c). If separate property of a spouse has been used either during the existence of the community property regime or thereafter to satisfy a community obligation, that spouse is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. La. C. C. art. 2365.

In evaluating Drayton's reimbursement claims, the trial court stated:

> [W]ith regard to the house, the mortgage that was paid, the only evidence put into the record was the payment sheet which showed that in 2016 there was a principle balance of $95,852.35 on the home when it was sold on the, I guess, it would – no, it wouldn't have been a HUD-1, whatever they're calling them now, was [$84,688.75] leaving a difference of $11,163.60. Half of that is $5,581.80.
>
> ***
>
> It comes down to a credibility issue and in this particular case I did not find the testimony of Mr. Drayton credible. I find my, this Court's opinion that he should be given the credit for the principle reduction of the house but not for the interest that was paid. The only evidence about principle reduction is as I previously set forth. If I tried to even figure out what it was in 2013 when allegedly no one had lived in the house I would purely be guessing and that's not what I'm gonna start doing.
>
> ***

It is undisputed the mortgage on the parties' former matrimonial domicile was a community obligation. However, as the trial court noted, the only evidence Drayton presented was the mortgage payment sheet which reflected the principal and remaining balances on the home at the time it was sold. The difference between those sums was $11,163.60. Based upon our review of the record and the evidence presented, we cannot say that the trial court manifestly erred in concluding that Drayton was entitled to reimbursement for one-half of the reduction in principal on the loan

11

associated with the former matrimonial domicile. We conclude, therefore, this assignment is without merit.

Drayton further contends the trial court erred in calculating the date of the termination of the community. He argues the date of termination was changed to October 27, 2005, due to an error in the February 2019 consent judgment. He also argues the petition for divorce was filed on April 7, 2005, and pursuant to La. C. C. art. 159, a divorce is retroactive to the date of filing. Drayton urges this court to "correct the trial court's error" to reduce the number of months for the community portion of his military retirement benefits.

La. C. C. P. art. 1951 provides:

On motion of the court or any party, a final judgment may be amended at any time to alter the phraseology of the judgment, but not its substance, or to correct errors of calculation. The judgment may be amended only after a hearing with notice to all parties, except that a hearing is not required if all parties consent or if no opposition has been received.

In *Thomas v. Williams*, 48,003 (La. App. 2 Cir. 5/15/13), 115 So. 3d 715, this Court stated:

La. C. C. P. art. 1951 contemplates the correction of calculation in a judgment, but does not allow the substantive amendment of judgments. Thus, the judgment may be amended by the court where the amendment takes nothing from or adds nothing to the original judgment. The proper recourse for an error of substance within a judgment is a timely application for new trial or a timely appeal.

It is well settled under our jurisprudence that a judgment which has been signed cannot be altered, amended or revised by the judge who rendered it, except in the manner provided by law. The judge cannot, on his own motion or on the motion of any party, change a judgment which has been so signed, notwithstanding it was signed in error.

*Id*. at 719-20 (internal citations omitted).

12

The judgment in dispute is the consent judgment entered February 12, 2019, which provided, in pertinent part:

> IT IS HEREBY ORDERED that that the legal regime of community acquets and gains existing between Petitioner and Defendant is terminated retroactive to the filing date of the October 27, 2005 Petition decreeing each party to be the owner of an undivided one-half (1/2) interest in and thereto.

The issue with regard to the incorrect date was not raised until the matter came to trial on the petition to partition. The colloquy was as follows:

| | |
|---|---|
| [COUNSEL FOR MESMER-DRAYTON]: | Yes. And you want to stipulate that the community property estate was terminated on October 27, 2005, pursuant to the consent judgment entered on February 12th of 2019? |
| [COUNSEL FOR DRAYTON]: | Well, on that issue, Your Honor, and uh, no, we don't want to stipulate to that and here's why. I was looking at that judgment, Your Honor *** I believe that just stated the date wrong. The petition was actually filed on April the 7th 2005, and I think that that was just an – an error as far as the typographical error because I don't believe there was a petition filed on October 27th unless I'm mistaken. I wasn't counsel back then but. <br> *** <br> Yeah, and I'm saying that the *** date of the termination should be April 7th, *** 2005. The date of the petition, in other words, it does say the filing date, but the filing date wasn't October the 27th as the judgment states that, I think it incorrectly stated the date. |
| THE COURT: | Well, on October 27, 2005, the case was called. Mr. Drayton was represented by Dan Scarborough, Ms. Drayton was represented by Jacqueline Scott. Agreement was reached. Among other things judgment of |

13

> divorce was granted as prayed for. That was all on October 27, 2005.
>
>         ***
>
> Then subsequently, Mr. Goodrich, on behalf of Mr. Drayton, in the February 12, 2019, consent judgment fixed the date as October 27, 2005. That's the date I'm gonna go with.
>
>         ***

We have reviewed this record in its entirety. Neither party sought to amend the February 12, 2019 consent judgment. The judgment resulted from a stipulated agreement between the parties and was signed by the trial court and the attorneys for both parties. The parties did not file a timely motion for new trial and did not timely appeal the judgment, and the delays to appeal the 2019 judgment have lapsed. Therefore, the consent judgment is final and will not be addressed by this Court.

## CONCLUSION

For the reasons set forth herein, we affirm the portion of the trial court's judgment pertaining to the reimbursement claim and the date of the termination of the community. We reverse the trial court's judgment as it relates to the amount of military retirement benefits to which Mesmer-Drayton is entitled. We remand this matter to the trial court with instructions to conduct an evidentiary hearing to equitably distribute Drayton's military retirement benefits, from June 27, 1997, until October 2002, applying the factors set forth in *Ferguson*, *supra*, and other relevant Mississippi statutes and jurisprudence. Costs of the appeal are assessed equally to the parties, Baron T. Drayton and Segen Mesmer-Drayton.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTIONS.**

14